# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RICHARD WAYNE NIDAY | ) | CHAPTER 13 |
| SHIRLEY ANN NIDAY | ) | |
| | ) | |
| Debtors. | ) | CASE NO. 11-72491 |

## MEMORANDUM DECISION

Although a number of motions and other pleadings are before the Court,[1] the issue which has been presented by the parties by agreement for decision at this time is limited in scope. Counsel for the Debtors[2] poses the question as follows:

> Does the [2005] amendment to section 1325(b) [of the Bankruptcy Code] prohibit debtors operating under a confirmed 36-month plan from receiving a prompt discharge upon early payment of the full amount due under the plan? The question assumes that the debtors are otherwise qualified for discharge, and that unsecured creditors are to receive a dividend of less than 100%.

(Debtors' Br. at 1, ECF No. 109). The Court would state the issue somewhat differently as follows:

> Does a Chapter 13 below median income debtor now have the unqualified right to pay off early the remaining payments due under the terms of a confirmed plan providing for payments over a term of thirty-six months when the total of such remaining payments would be insufficient to pay all allowed unsecured claims in full?

For the reasons stated below, this Court concludes that there is no such unqualified right, but that

---

[1] Debtors' Motion to Modify Plan and the Bank of Fincastle's Objection thereto; the Debtors' Motion for Order Approving Early Completion of Plan, the Trustee's Response, and the Bank of Fincastle's Objection thereto; and the Notice of Chapter 13 Discharge Hearing.

[2] The Court has been advised that since the date of confirmation of the Plan under which the Debtors have been operating in this case, Shirley Niday has died.

such a debtor may seek modification of the confirmed plan for that purpose under the provisions of Code § 1329. This written decision follows the Court's announcement of an oral ruling to the same effect in open court on August 12, 2013 after hearing the arguments of counsel. On August 21, 2013 the Chapter 13 Trustee filed a Motion to Modify the Plan which is not presently before the Court for decision.

A brief summary of the factual background of the present dispute may be helpful. The Debtors' financial difficulties stem from their decision in 2002 to purchase and operate a business known as Night and Day, LLC. At that time they had accumulated, apparently, some significant assets which were reflected in a financial statement dated January 31, 2002 as having a net value of $499,000. They elected to finance the acquisition and provision of working capital for this business by means of loans totaling $487,000 which they acquired from the Bank of Fincastle ("the Bank"). Unfortunately the business was notably unsuccessful and ultimately failed, precipitating the filing of this case. The conduct of the case has been marked by acrimony between the Bank and the Debtors evidenced by the former's efforts to challenge various actions taken by the Nidays which, from the Bank's perspective, have indicated an intention on their part to be generous to their adult children rather than attempting to the best of their ability to pay their creditors, principally the Bank. Not surprisingly, this background resulted in a contested confirmation process which ultimately was resolved, however, under the terms of an agreed Plan confirmed on November 8, 2012. Under this Plan the Debtors committed to making a lump sum payment of $61,127.95 within twenty-one days of the confirmation order plus twenty-seven monthly payments of $500 each in addition to $5,717 previously paid, resulting in an estimated distribution to general unsecured creditors of approximately 20% upon their allowed claims.

The Debtors' pre-confirmation budget included a monthly allotment of $502 to life insurance premiums for policies upon the lives of the Nidays. As relevant to the present dispute, two of those policies were policies upon the life of Mrs. Niday in the amounts of $15,000[3] and $50,000 of which Mr. Niday was the indicated beneficiary. On or about December 3, 2012, less than a month after obtaining confirmation of the Plan, the Debtors tendered to the Chapter 13 Trustee a check in the amount of $12,365[4] representing the balance due under the terms of the Plan for the remaining twenty-four months of its specified thirty-six month duration. The Trustee declined to accept this payment as satisfaction of the Debtors' remaining obligations under the Plan. The previously noted pleadings now before the Court represent the Debtors' efforts to complete their Plan and obtain a discharge of their remaining indebtedness to their creditors and the Bank and the Trustee's combined efforts to prevent their doing so before the thirty-six month term of their Plan is over and any possibility of making a claim against the life insurance proceeds from the policies on Mrs. Niday's life is lost.[5]

## CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28 U.S.C.

---

[3] The proceeds of the $15,000 policy have been "used to pay funeral and related expenses." (Debtors' Br. at 1, ECF No. 98).

[4] The Debtors represent that these funds were obtained from an exempt workers' compensation settlement obtained by the male debtor.

[5] Although the precise facts are not stipulated or otherwise before the Court at this time, the Court understands that the Trustee and the Bank assert that at some point before Mrs. Niday's death, whether before or after confirmation of the Plan is unclear, the beneficiary of this policy was changed from Mr. Niday to the couple's adult children. Neither is it clear who the actual owner of this policy was and therefore who actually effected this purported change.

§§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.  Matters involving confirmation of plans are explicitly included in the non-exclusive list of "core" bankruptcy proceedings by virtue of 28 U.S.C. § 157(b)(2)(L).  The issue before the Court, which deals with the modification of a confirmed plan, certainly appears to be a "core" proceeding by virtue not only of subsection (b)(2)(L) but also pursuant to subsection (b)(2)(O) ("other proceedings affecting . . . the adjustment of the debtor-creditor . . . relationship").  The Court further concludes that it has the constitutional authority to enter a final order ruling upon the various pleadings now before the Court.

The present dispute among the parties largely swirls around the introduction of the term "applicable commitment period" in Code § 1325(b)(4) with respect to Chapter 13 plans as a part of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Succinctly, the "applicable commitment period" for most Chapter 13 debtors is three years, but for debtors for which the "current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than . . . [the applicable according to household size] median family income of the applicable State," the commitment period is five years.  At the time of plan confirmation a bankruptcy court "may not" confirm a plan over the objection of the Trustee or the holder of an allowed unsecured claim unless either the claim is paid in full or all of the debtor's "projected disposable income" during the "applicable commitment period" is devoted to plan payments.  Code § 1325(b)(1).  As previously noted, for the Debtors in this case the "applicable commitment period" is three years.

There have been a significant number of decisions, including one by Judge Krumm (now

4

retired) of this Court, which have examined the question in the context of plan confirmation whether the number of months in a case's applicable commitment period has a temporal component or whether it is simply a multiplier to be used in calculating a debtor's obligation under a confirmed plan. Judge Krumm, in accord with a majority of the cases which have considered the issue,[6] held that, in a case involving above median income debtors, the five year commitment period is a temporal requirement. *In re Hylton*, 374 B.R. 579, 587 (Bankr. W.D. Va. 2007); *See also In re Moose*, 419 B.R. 632, 635 (Bankr. E.D. Va. 2009); *But see* Lundin, *Chapter 13 Bankruptcy*, 3d Edition, § 493.1 at p. 493-8 and § 506.1 at p. 506-5. From these

---

[6] *See, e.g., In re Slusher,* 359 B.R. 290 (Bankr. D.Nev. 2007) (stating that the applicable commitment period stands for the appropriate amount of time during which the debtor has agreed to make payments); *In re Cushman,* 350 B.R. 207, 212–13 (Bankr. D.S.C. 2006) (concluding that Code never refers to applicable commitment period as a multiplier; the legislative history supports this view in that the caption of Section 318 of the Act is "Chapter 13 plan to have five year duration in certain cases"; plain language of statute compels this result); *In re Girodes,* 350 B.R. 31, 35 (Bankr. M.D.N.C. 2006) (finding the term "period" imposes temporal rather than monetary requirement); *In re Davis,* 348 B.R. 449, 455–57 (Bankr. E.D.Mich. 2006) (recognizing the word "period" means a chronological division; if Congress had intended a multiplier it could have clearly described it as such; if applicable commitment period is only used as a multiplier, § 1325(b)(4)(B) would have no meaning; monetary approach represents a gross departure from pre-BAPCPA practice not justified by the language of the statute; terms "commitment" and "period" contemplate action over a period of time and do not on their face connote a formula to arrive at an amount; legislative history supports this view; this construction would permit debtors to cash out of Chapter 13 to the detriment of creditors); *In re Gress,* 344 B.R. 919, 923 (Bankr. W.D.Mo. 2006) (ruling that applicable commitment period is a temporal rather than monetary requirement); *In re Dew,* 344 B.R. 655, 661 (finding Section 1322 sets maximum periods of plan length; Section 1325(b)(4)(A) sets minimum plan length); *In re Schanuth,* 342 B.R. 601, 607–08 (Bankr. W.D.Mo. 2006) (ruling the word "period" denotes a chronological division; § 1325(b)(4)(B) provides the only method to shorten the applicable commitment period; if the phrase is a multiplier it renders § 1325(b)(4)(B) awkward if not meaningless; if the term is used as a multiplier it would represent a gross departure from pre-BAPCPA practice not justified by the language of the statute); *In re McGuire,* 342 B.R. 608, 615 (Bankr. W.D.Mo. 2006) (reasoning that § 1325(b)(4)(B) provides the only way to shorten the applicable commitment period; this interpretation does not change pre-BAPCPA practice); *In re Crittendon,* No. 06–10322C–13G, 2006 WL 2547102 (Bankr. M.D.N.C. Sept.1, 2006) (stating the applicable commitment period refers to plan duration and is not a multiplier).

5

decisions the Trustee and the Bank conclude that there is a similar temporal requirement for cases involving a three year commitment period and that a Chapter 13 debtor may not avoid that requirement by the simple expedient of paying off when he or she may choose the balance due under the terms of such debtor's confirmed plan or attempting to modify the plan to the same effect. Counsel for the Debtors raises two arguments opposing this analysis. First, these decisions have dealt, mostly if not exclusively, with above median income debtors with a required five year commitment period. Second, the provisions of Code § 1329 dealing with modification of confirmed plans, while expressly making §§ 1322(a), 1322(b), 1323(c) and 1325(a) applicable to any modification of a confirmed plan, notably do not make § 1325(b) also applicable. Code § 1329(b)(1). Section 1325(b) of course is the subsection providing for the pertinent applicable commitment period. While § 1329(b)(1) predates BAPCPA and was not changed by it, perhaps it is worthy of note that the legislation did amend § 1329 by adding subsection (a)(4) dealing with health insurance expenditures.

Code § 1329(a)(2) expressly provides that a confirmed plan "may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to extend or reduce the time for such payments[.]" The plain language of that subsection would appear to be applicable to the effort of the Debtors here to "reduce" the time during which their confirmed Plan provides that they will make payments to the Trustee. Accordingly, the Court is not persuaded, as counsel for the Debtors asserts, that there was a pre-BAPCPA recognized right of a Chapter 13 debtor to pay off early the remaining balance due under the terms of a confirmed

plan and thereby obtain an early discharge,[7] and that such right was not changed by BAPCPA and continues to remain viable, at least for below median income debtors. The Court concludes instead, however, that § 1325(b), after its amendment in 2005, introduced the term "commitment period" to both below and above median income debtors, with a three year commitment period for the former and a five year period for the latter category of bankruptcy debtors. The Court will also follow Judge Krumm's holding in *Hylton* that the applicable commitment period imposes a temporal requirement, which I conclude is a material element of the confirmation

---

[7] The Court acknowledges that there is worthy judicial authority supporting this contention, such as *In re Brumm*, 344 B.R. 795, 801-04 (Bankr. N.D.W. Va. 2006) (citing and discussing cases on both sides). There is also authority to the contrary, *see In re Sunahara*, 326 B.R. 768, 781-82 (B.A.P. 9th Cir. 2005); *In re Keller,* 329 B.R. 697, 699-700 (Bankr. E.D.Cal. 2005); *In re Drew,* 325 B.R. 765, 772 (Bankr. N.D. Ill. 2005), and the Court's own experience has been that bankruptcy debtors seeking to complete their plan early have filed a motion to such effect and noticed the Trustee and the creditors. The Court also notes that while the Fourth Circuit's decision *In re Murphy*, 474 F.3d 143, 151 (4th Cir. 2007), expressly mentioned the disagreement among courts as to whether an early payoff of obligations amounted to a modification of the plan, it concluded that the issue was controlled by its decision of *In re Arnold*, 869 F.2d 240 (4th Cir. 1989), and that simply refinancing a home mortgage to provide funds to pay off a plan early did not "alter the financial condition of the debtor and, therefore, cannot provide a basis for the modification of a confirmed plan pursuant to §§ 1329(a)(1) or (a)(2)." The *Murphy* opinion actually dealt with two combined cases, one (the Goralskis) involving proceeds from a mortgage refinancing dealt with in the language just quoted, and the other (Mr. Murphy) involving a sale of the debtor's condominium within about eleven months after filing his Chapter 13 petition for a price more than 50% higher than its scheduled value, which was higher than the parties' expectations at the time of plan confirmation. The Court of Appeals affirmed the lower court decisions allowing modification of the confirmed plan to permit capture of enough of Mr. Murphy's unencumbered sales proceeds to permit payment of the allowed unsecured claims in full. This result seems to this Court to constitute a rejection of any assertion that within the Fourth Circuit there is or has been any unqualified right enjoyed by Chapter 13 debtors to pay off early the remaining monthly payments due under the terms of a confirmed plan.

bargain not subject to reduction absent a modification of the plan approved by the Court pursuant to § 1329 of the Code.

In reaching this conclusion, the Court recognizes that it arguably ventures beyond the rationale employed by the Court of Appeals in the *Arnold* and *Murphy* decisions which both focus on the source of the funding sought to be utilized to increase the distribution to general creditors, specifically, higher earned income, home mortgage refinancing, and sale of a condominium for a larger price than what might have been reasonably anticipated at the time of plan confirmation. The Court believes that a fresh analysis is warranted for several reasons. First, both were cases governed by pre-BAPCPA law which contained no provision for an "applicable commitment period" or the expanded powers provided by section 315(b)(2) of BAPCPA, amending § 521 of the Code, to parties in interest to monitor a debtor's post-confirmation financial circumstances. *See* 11 U.S.C. § 521(f). Granting such additional powers to creditors and bankruptcy trustees seems clearly intended to encourage them to utilize those powers in furtherance of their already existing authority to seek a modification of the terms of an existing confirmed plan pursuant to § 1329. Otherwise, what would be the point? Second, the rationale of *Murphy* looking to the source of funding to pay off the remaining months' obligations under a confirmed plan could easily lead to gamesmanship by canny debtors. To be more specific, if Mr. Murphy had simply borrowed money against his condominium and then paid off his remaining months' payments still due under the confirmed plan, it appears he could have done so successfully and obtained an early discharge. Once safely discharged, he could then have sold the property and kept the entire proceeds. That doesn't seem like a very appealing result as it can lead inevitably to, in effect, a "race to the courthouse" between a

debtor's efforts to pay off his account with borrowed or exempt money versus a motion by a creditor or a Chapter 13 Trustee seeking a modification of the plan beneficial to creditors.  The Court acknowledges that in the case now before it Mr. Niday's attempt to pay off his Plan early with money from an exempt workers' compensation claim settlement is much more like use of borrowed money to satisfy a plan than it is like the debtor who has experienced a dramatic positive change in financial circumstances due to obtaining a much higher paying job or selling property for a quick and unexpectedly very large profit.  Of course *Arnold* and *Murphy* were decided on their respective facts and the legal arguments advanced by the parties concerning them.  This Court concludes that in a case presenting a situation akin to the one asserted to be presented here, the Court of Appeals would approve of an approach under which all of the relevant circumstances surrounding a debtor's efforts to pay off a plan obligation early would be taken into account in deciding whether to approve an early payoff.  Lastly, a rule that a debtor's applicable commitment period imposes a temporal requirement at the time of plan confirmation would lose much of its practical force if a debtor having the financial means to do so could simply sidestep that requirement by tendering a payment to the Trustee after confirmation representing the balance due under the confirmed plan before the prospect of better financial days ahead became apparent to creditors or the Trustee.

So, if the Debtor wants an early discharge before the end of his three year commitment period, he needs to obtain a modification of the Plan to do so.  That is the result which was reached in the case of *In re Fridley*, 380 B.R. 538, 545-46 (9th Cir. BAP 2007), a decision in a case controlled by post-BAPCPA law and involving below median income debtors, and which this Court believes was correctly decided.  If the modification is opposed, the debtor bears the

burden of establishing compliance with the provisions of § 1329,[8] one of which is the incorporated requirement of § 1325(a)(3) that "the plan [modification] has been proposed in good faith." Therefore, the Court concludes that an evidentiary hearing will be needed to determine whether the surviving Debtor's proposed modification of the terms of the confirmed Plan is one which ought to be approved or disapproved. Code § 1329(b)(2). This matter comes on for a continued hearing on September 9, 2013 at 2:00 p.m. at which a final hearing will be set. An order to this effect will be entered contemporaneously herewith.

DECIDED this 27th day of August, 2013.

_____
UNITED STATES BANKRUPTCY JUDGE

---

[8] *See* Hon. Barry Russell, *Bankruptcy Evidence Manual*, § 301:76 at p. 387-91 (2013 ed.).